**In re Jim Donn MANLEY and Judith Ann Manley, Debtors.**

**John and Deborah BRYAN, Plaintiffs,**

**v.**

**Jim Donn MANLEY, Defendant.**

**Bankruptcy No. 90–00984–W.
Adv. No. 90–0197–W.**

United States Bankruptcy Court,
N.D. Oklahoma.

Jan. 3, 1992.

Timothy L. Olsen, Tulsa, Okl., for plaintiffs.

Mark A. Craige, Tulsa, Okl., for defendant.

## ORDER DENYING DEFENDANT'S "MOTION FOR SUMMARY JUDGMENT"

MICKEY DAN WILSON, Bankruptcy Judge.

On July 9, 1990, plaintiffs John and Deborah Bryan ("the Bryans") filed their complaint herein, seeking determination that debts of $36,620.00 in actual damages, $76,631.00 in punitive damages, and $54,148.50 in attorney fees, which are owed to them by defendant Jim Donn Manley ("Manley"), are excepted from discharge pursuant to 11 U.S.C. § 523(a)(4). On August 8, 1990, Manley answered. On October 12, 1990, Manley filed his "Motion for Summary Judgment" and "Brief in Support ..." thereof. On October 31, 1990, the Bryans filed their "... Combined Response to [Manley's] Motion for Summary Judgment and Motion for Summary Judgment," a "Brief in Response to [Manley's] Motion for Summary Judgment and in Support of [Bryans'] Motion for Summary Judgment," and "[Bryans'] Exhibits in Support of Motion for Summary Judgment." On November 30, 1990, Manley filed his "Objection to [Bryans'] Motion for Summary Judgment," and an "Affidavit ... in Support ..." and "Brief in Support ..." thereof. On December 10, 1990, the Bryans filed their "... Reply to [Manley's] Objection to Motion for Summary Judgment."

In this order, the Court addresses Manley's motion for summary judgment and matters pertinent thereto appearing in the above-named documents. By separate order, the Court deals with the Bryans' motion for summary judgment.

Judgment may be entered summarily "if the pleadings ... and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law," F.R.Civ.P. 56(c) adopted by F.R.B.P. 7056.

The parties' attorneys have provided the Court with extensive recitations of facts which are either undisputed or admitted subject to certain qualifications. The Court takes judicial notice of certain matters appearing of record in the above-styled bankruptcy case and in this adversary proceeding. Pursuant thereto, the Court finds, for purposes of ruling upon this motion for summary judgment, as follows.

Manley owned ⅓ of the stock of Watkins Construction Company ("Watkins") and was an officer and director of the corporation, complaint ¶ 6, answer ¶ 1.

"In September of 1985, the [Bryans] entered into a contract with Watkins ... to remodel their home located at 6766 South Columbia, Tulsa, Oklahoma. The contract called for the Bryans to pay Watkins a total of $119,325.00 in monthly draws based on percentage of completion," Bryans' brief ¶ 1, Manley's obj. brief p. 1.

"The Bryans made the following payments to Watkins: September, 1985—$11,950.00; October, 1985—$29,850.00; November, 1985—$29,850.00; January, 1986—$10,000.00; March, 1986—$19,850.00; April, 1986—$5,000.00; Total—$106,500.00," Bryans' brief ¶ 2, Manley's obj. brief p. 1.

"The total cash receipts of Watkins, from the Bryans, was $106,500.00," Bryans' brief ¶ 3, Manley's obj. brief p. 2.

A sum fixed by the Bryans at $64,869.43, and estimated by Manley at "approximately $64,000.00," was paid by Watkins to subcontractors who contributed materials or services for remodeling the Bryans' home, complaint ¶ 8, answer ¶ 2, Bryan's brief ¶ 4, Manley's obj. brief p. 1.

A sum fixed by the Bryans at $41,630.57, and estimated by Manley at "approximately $41,000.00," was used by Watkins to pay "expenses of Watkins" other than payment to subcontractors who contributed materials or services for remodeling the Bryans' home, complaint ¶ 8, answer ¶ 2, Bryan's brief ¶ 5, Manley's obj. brief p. 1.

"The following liens were filed against the Bryan property:

| Lienholder | Date Filed | Amount |
|---|---|---|
| Architectural Interiors of Oklahoma | 05/22/86 | $ 1,627.23 |
| Carpet Showroom, Inc. | 06/04/86 | $ 960.00 |
| Elite Electric, Inc.—Plumbing Division | 06/17/86 | $ 5,048.59 |
| Hahn Appliance Center, Inc. | 05/12/86 | $ 5,018.15 |
| Shelley Martin | 06/10/86 | $ 2,441.00 |
| R & R Carpet and Tile Co., Inc. | 05/21/86 | $ 4,733.00 |
| Rain–Flo of Tulsa, Inc. | 06/10/86 | $ 1,240.00 |
| Union Building Materials, Inc. | 05/14/86 | $ 943.53 |
| Wesche Company | 07/15/85 | $ 354.81 |
| W.W.P.I. | 06/11/86 | $ 5,814.25 |
| Southern Millwork Company, Inc. | 05/27/86 | $ 916.91 |
| Overhead Door Company of Tulsa, Inc. | 06/27/86 | $ 86.91 |
| Earl Cotner | 05/20/86 | $ 2,433.90 |
| Superior Insulators, Inc. | 06/13/86 | $ 678.56 |
| Jerry W. Reed | 05/09/86 | $ 330.00 |
| James W. Kirby | 07/22/86 | $11,796.00 |
| TOTAL: | | $44,422.84," |

Bryans' brief ¶ 6, Manley's obj. brief p. 1.

---

"The Bryans were required to take certain steps to clear the cloud on the property that was created by the outstanding unpaid liens," Bryans' brief ¶ 7, Manley's obj. brief p. 1.

"The Bryans settled with the following lienholders for the following amounts:

| | |
|---|---|
| ARCHITECTURAL INTERIORS | 813.63 |
| CARPET SHOWROOM, INC. | 480.00 |
| ELITE ELECTRIC | 2,524.28 |
| HAHN APPLIANCE CENTER | 2,462.08 |
| SHELLEY MARTIN | 1,220.50 |
| R & R CARPET & TILE | 2,356.50 |
| RAIN–FLO OF TULSA | 620.00 |
| UNION BUILDING MATERIALS | 530.69 |
| WESCHE COMPANY | 177.41 |
| WRIGHT WALLPAPER, INC. | 2,907.13 |
| SOUTHERN MILLWORK | 458.46 |
| | 14,550.68," |

Bryans' brief ¶ 8, Manley's obj. brief p. 1.

"The Bryans settled with the following creditors with lien rights for the following amounts:

| | |
|---|---|
| ACE FENCE COMPANY | 126.00 |
| LOUISE GILLAM | 45.16 |
| SOONER WEATHERSTRIP COMPANY | 67.00 |
| BUD WYATT COMPANY | 617.09 |
| | 855.25," |

Bryans' brief ¶ 9, Manley's obj. brief p. 1.

"The Bryans posted the following bonds to discharge the following liens:

| | |
|---|---|
| EARL COTNER | 3,050.37 |
| SUPERIOR INSULATORS | 856.20 |
| JERRY W. REED | 420.50 |
| JAMES W. KIRBY | 14,753.00 |
| | 19,080.07," |

Bryans' brief ¶ 10, Manley's obj. brief p. 2.

"The Bryans incurred $5,902.60 in attorney fees to settle with the lienholders and creditors.... Said attorney fees were reasonable and necessary," Bryans' brief ¶ 11, Manley's obj. brief p. 1.

"One of the subcontractors, James W. Kirby, filed a case in Tulsa County District Court to enforce his lien rights against the Bryans. The Bryans have incurred [$]6,634.05 in attorney fees to defend that case," Bryans' brief ¶ 12, Manley's obj. brief p. 1.

"At no time during the period of time from September, 1985 to the date of receiving the notification from the Tulsa County Clerk did [the Bryans] receive notice, written or otherwise, from any contractor, subcontractor, laborer or materialman, that any person performing labor or furnishing materials for the remodeling of the Bryan's residence could be entitled to a lien against the property," Manley's brief in support p. 2.

"[The Bryans] successfully defended a mechanic's lien foreclosure in State Court on the basis that the lien was unenforceable against [the Bryans] due to the failure

of the lien claimant to give proper notice," Manley's brief in support p. 2.

The Bryans filed Case No. CJ–86–7308 in the District Court in and for Tulsa County, State of Oklahoma, against Manley and others. This case was tried to a jury before the Honorable Judge Donald Lane, complaint ¶ 12, answer ¶ 1, Bryans' brief ¶ 17, Manley's obj. brief p. 1, Bryans' exhibit C.

"On March 21, 1990, a jury verdict was rendered against Defendant Manley for $36,620.36 in actual damages and $76,-630.57 in punitive damages," Bryans' brief ¶ 15, Manley's obj. brief p. 2.

"The jury had been instructed on the law and made certain findings of fact in order to render a verdict against Defendant Manley," Bryans' brief ¶ 16, Manley's obj. brief p. 2.

"On July 18, 1990, the Honorable Judge Donald Lane entered judgment and accepted the jury's findings and verdict as to all issues," Bryans' brief ¶ 17, Manley's obj. brief p. 1.

"The Court awarded the [Bryans] their attorney fees in the amount of $54,148.50, pre-judgment interest from the date of filing the action to the date of the verdict at the rate provided by law and costs of the action in the amount of $1,788.75," Bryans' brief ¶ 18, Manley's obj. brief p. 1.

On March 13, 1990, Manley filed his voluntary petition for relief under 11 U.S.C. Chapter 7 in this Court, Case No. 90–00984–W docket no. 1, Case No. 90–00985–W docket no. 1. On August 14, 1990 Manley's discharge was entered, Case No. 90–00984–W docket no. 46.

The Court must determine whether these undisputed facts require judgment in Manley's favor as a matter of law.

A discharge in bankruptcy is an injunction against the collection of various debts *in personam,* former Act § 14(f)(2), present Code 11 U.S.C. § 524(a)(2), issued by a Bankruptcy Court acting as a court of equity, *In re Higginbotham,* 111 B.R. 955, 961, 963–964, 965–967 (B.C., N.D.Okl.1990). Here the injunction has already been issued, in the mechanical manner of modern bankruptcy procedure, see F.R.B.P. 4004(a), (c). The question now before this Court concerns the proper scope of said injunction.

The Bryans' complaint asserts that the discharge granted to Manley does not affect the judgment debts for damages and costs, because such debts are excepted from discharge by 11 U.S.C. § 523(a)(4). This statute provides that "A discharge under section 727 ... of this title does not discharge an individual debtor from any debt ... for fraud or defalcation while acting in a fiduciary capacity ..." Manley argues that, given the facts recited above, the Bryans' complaint must fail and Manley is entitled to a judgment discharging these debts as a matter of law (1) in their entirety, because Manley was not "acting in a fiduciary capacity," or (2) at least in part, because punitive damages are dischargeable even if actual damages are not.

The Bryans assert that Manley's "fiduciary capacity" arose under 42 O.S. § 152, which requires that

(1) The amount payable under any building or remodeling contract shall, upon receipt by any contractor or subcontractor, be held as trust funds for the payment of all lienable claims due and owing or to become due and owing by such contractors or subcontractors by reason of such building or remodeling contract ...,

and 42 O.S. § 153, which provides that

(1) The trust funds created under Section 152 of this title shall be applied to the payment of said valid lienable claims and no portion thereof shall be used for any other purpose until all lienable claims due and owing or to become due and owing shall have been paid ...

It appears to be agreed that funds were paid under a remodeling contract, and were received by the contractor Watkins, that lien claims arose under 42 O.S. §§ 141 and/or 143, and that liens were actually perfected or validated by filing lien statements pursuant to 42 O.S. §§ 142 and/or 143. Nevertheless, Manley argues that no trust can be recognized, because no notice

of the possibility of liens was given to the Bryans pursuant to 42 O.S. § 142.1.

In a similar case, involving a debt owed by a contractor in bankruptcy (Turner) to a subcontractor (Discount), this Court ruled as follows:

> Turner argues that Discount's failure to give notice to the homeowner, Davis, pursuant to 42 O.S. § 142.1, renders Discount's lien unenforceable and somehow negates Turner's fiduciary capacity as to Discount. Failure to comply with statutory requirements as to enforceability and perfection of liens may impair the lien, *Bohn v. Divine,* 544 P.2d 916 (Okl. App.1975), *C & C Tile and Carpet Company, Inc. v. Aday,* 697 P.2d 175 (Okl. App.1985), *In re Tefertiller,* 772 P.2d 396 (Okl.1989), and may reduce the priority of a materialman's claim upon any remaining trust funds, *In re Tefertiller,* supra. But Turner admits that an Oklahoma court gave Discount judgment *in rem* in its action to foreclose its lien, notwithstanding failure to give notice pursuant to 42 O.S. ·§ 142.1—although the reason for this does not clearly appear. In any event, such failure by the lien creditor does not excuse the contractor-trustee's breach of his own fiduciary duty to hold trust funds so that no liens need be created at all. The duty exists from the moment the contractor receives funds, 42 O.S. § 152(1). Subsequent misadventures of the creditor in pursuit of one remedy (the lien) need not take away the creditor's alternative remedy (available trust funds, or an award of damages for their unavailability). Whatever noncompliance with 42 O.S. § 142.1 may have done to Discount's *lien,* it does not cancel Turner's *duty,* nor remove his *debt.* The issue now before this Court concerns dischargeability of a debt owed to the supplier, not validity of a lien on the homeowner's building or priority of a claim against the balance of the trust,

*In re Turner,* 134 B.R. 646, 656–57 (B.C., N.D.Okl.1991). This reasoning applies just as strongly in the present matter. If Watkins had done its duty under 42 O.S. § 152, subcontractors like Kirby would not have been driven to file lien claims pursuant to

42 O.S. §§ 141, 142, 143, and the Bryans would not have had to "take steps" at great cost to themselves "to clear the cloud on the property that was created by the outstanding unpaid liens." Whether the liens ultimately proved enforceable or not is beside the point: trust funds were still received, they were still misapplied, and such misapplication still caused damage to the Bryans.

The Court further notes that 42 O.S. § 142.1 is obviously intended to protect homeowners like the Bryans. It would be perverse to construe and apply such a statute in a manner that defeats the homeowners' rights as against a derelict contractor. See 12 O.S. § 2; 25 O.S. § 29, *C & C Tile and Carpet Company, Inc. v. Aday,* supra.

■ The Court concludes that mere failure to give notice of the possibility of liens pursuant to 42 O.S. § 142.1 does not cancel a contractor's fiduciary duty to hold trust funds pursuant to 42 O.S. §§ 152, 153. Accordingly, in this regard Manley has failed to show that he is entitled to judgment in his favor as a matter of law.

The Bryans assert that not only their actual damages but also punitive damages and attorney fees awarded them against Manley are excepted from discharge. Manley argues that, even if the actual damages are excepted from discharge, the punitive damages are not excepted from discharge under 11 U.S.C. § 523(a)(4).

The issue is one of statutory interpretation. But 11 U.S.C. § 523(a)(4) must be read and interpreted in its historical and statutory context.

Under the Bankruptcy Act of 1898 ("the Act"), the treatment of debts and claims depended on their "provability." Provable debts could be paid from the bankruptcy estate; but to the extent they were unsatisfied, they could also be discharged. Nonprovable debts could not be paid from the bankruptcy estate; but they also could not be discharged. At first, "provability" seems to have been rather a cut-and-dried affair reflecting bankruptcy's commercial origins and supposedly simple distributive

function. Tort debts were not provable, which automatically rendered most punitive damages non-provable and therefore non-dischargeable. But debts evidenced by judgments were provable, which automatically rendered those punitive damages already reduced to judgment provable and dischargeable. There was insufficient reason for such disparate treatment of unliquidated and liquidated damages. Accordingly, the Act of 1898 was construed by courts and amended by Congress so as to render more and more debts provable and therefore *prima facie* dischargeable—while also providing that some types of debts, even though provable, could be specially excepted from discharge, as demanded by sound public policy and equitable good conscience. The Act's emphasis shifted from arbitrary "provability" to (hopefully) rational and careful "dischargeability." Act §§ 17, 57, 63; and see *Schall v. Camors*, 251 U.S. 239, 40 S.Ct. 135, 64 L.Ed. 247 (1920), *Lewis v. Roberts*, 267 U.S. 467, 45 S.Ct. 357, 69 L.Ed. 739 (1925), 1A *Collier on Bankruptcy* (14th ed. 1978) ¶¶ 17.02, 17.03, 17.04, 17.05, 17.08, 3 *Collier on Bankruptcy* (14th ed. 1977) ¶¶ 57.01, 57.02, 57.15, 3A *Collier on Bankruptcy* (14th ed. 1975) ¶¶ 63.01, 63.02, 63.04, 63.05, 63.09, 63.10, 63.12, 63.25, 63.27, 63.29, 63.30, 63.36.

In pertinent part, Act § 63 came to provide that

a. Debts ... may be proved ... which are founded upon (1) a fixed liability, as evidenced by a judgment ..., absolutely owing at the time of the filing of the petition ... (3) a claim for taxable costs incurred in good faith by a creditor before the filing of the petition in an action to recover a pro[v]able debt ... (5) provable debts reduced to judgments after the filing of the petition and before the consideration of the bankrupt's application for a discharge ... (7) the right to recover damages in any action for negligence instituted prior to and pending at the time of the filing of the petition in bankruptcy; (8) contingent debts ...,

while Act § 17 came to provide that

a. A discharge in bankruptcy shall release a bankrupt from all of his provable debts ... except such as ... (2) are liabil-

ities for obtaining money or property by false pretenses or false representations, or for obtaining money or property on credit or obtaining an extension or renewal of credit in reliance upon a materially false statement in writing respecting his financial condition made or published or caused to be made or published in any manner whatsoever with intent to deceive, or for willful and malicious conversion of the property of another ... (4) were created by his fraud, embezzlement, misappropriation or defalcation while acting as an officer or in any fiduciary capacity ... (8) are liabilities for willful and malicious injuries to the person or property of another other than conversion as excepted under clause (2) of this subdivision.

To the extent that any punitive damages were not provable under Act § 63(a), such punitive damages were also nondischargeable. To the extent that any punitive damages were provable under Act § 63(a), such punitive damages would still be nondischargeable if they were "liabilities for" or "liabilities created by" the infractions specified in Act § 17(a)(2), (4) or (8).

In *Coen v. Zick*, 458 F.2d 326 (9th Cir. 1972), a judgment debt for compensatory and punitive damages for wilful and malicious wrongful eviction was held entirely nondischargeable under Act § 17(a)(2), (8). The decision was an extension of a prior ruling in *Barbachano v. Allen*, 192 F.2d 836 (9th Cir.1951), that certain types of consequential damages were dischargeable under Act § 17(a)(2) while *other* types were nondischargeable. The *Coen* court observed,

We note that in *Barbachano* the dischargeability of each amount was treated separately because each was based upon a separate finding with a separate award of damages as to each injury. In the case before us, however, there is only one claimed cause of action consisting of a number of different acts and one claim of damages consisting of both compensatory and punitive elements for the same acts. If we follow the reasoning in *Barbachano* here, both punitive and compen-

satory damages flow from one and the same course of conduct. If the acts were intentional and malicious they would support a right in the plaintiff to be compensated for loss or damage and they would also justify a recovery of punitive damages. But the legal basis for each is the same. That is what the appellant argues, and with that argument we agree.

The statutory exception which measures non-dischargeability is "... for liabilities ... for willful or malicious injuries to the person or property of another...." The exception is measured by the nature of the act, i.e., whether it was one which caused willful and malicious injuries. All liabilities resulting therefrom are non-dischargeable. One liability is limited to actual compensation, presumably out of pocket expense, loss of profits, and other provable damages. But for this type of conduct, yet another liability may be incurred if the jury under proper instructions sees fit to award it. That is for punitive damages. Both types of liability are within the statute as "liabilities" for "willful or malicious injuries to the person or property of another."

. . . . .

We think it is clear from the record in this trial court that compensatory damages were awarded for willful and malicious acts. Therefore, that award is not dischargeable in bankruptcy.

Our decision on this question of necessity is also conclusive of the cross appeal of appellees to set aside the order of the referee denying discharge of the judgment for $1,000 for punitive damages. The cross appeal is denied,

*Coen v. Zick,* 458 F.2d pp. 329–330. This rule was followed in *National Homes Corporation v. Lester Industries, Inc.,* 336 F.Supp. 644 (W.D.Va.1972), *In re Webster,* 1 B.R. 61 (B.C., E.D.Va.1979), and *In re Willis,* 2 B.R. 566 (B.C., M.D.Ga.1980); was apparently assumed without discussion in *In re Franklin,* 726 F.2d 606 (10th Cir. 1984); and was also adopted by bankruptcy courts making their own punitive damage awards in nondischargeability actions, *In re Cummings,* 3 B.C.D. 908 (B.C., W.D.Mo. 1977), *In re Berberian,* 34 B.R. 580 (B.C., D.R.I.1983).

All of the cases just cited dealt with Act § 17(a)(2), (8), which spoke of "liabilities for ..." obtaining money, property or credit on false pretenses or wilful and malicious injury to person or property. This Court knows of no case dealing with punitive damages under Act § 17(a)(4), which spoke of "liabilities ... created by ... fraud, embezzlement, misappropriation or defalcation while acting ... in any fiduciary capacity." It might be argued that the words "created by" indicate actual damages only. If so, then punitive damages imposed for "arms-length" fraud would be nondischargeable under Act § 17(a)(2), while punitive damages imposed for fraud in a fiduciary capacity would be dischargeable under Act § 17(a)(4). It is difficult to imagine why Congress would have wanted "arms-length" frauds under § 17(a)(2) treated more severely than frauds in a fiduciary capacity under § 17(a)(4). It is more likely that, if punitive damages could be nondischargeable under § 17(a)(2), (8), they could likewise be nondischargeable under § 17(a)(4); and the distinction between "liabilities for" and "liabilities ... created by" should be treated as a distinction without a difference.

The Bankruptcy Code of 1978 ("the Code") abandoned "provability." All claims which were valid, enforceable, and reducible to money judgment were allowed; and all allowable claims could be discharged, with exceptions set forth in Act § 17's successor, 11 U.S.C. § 523. 11 U.S.C. §§ 101(5), (12), 501, 502(a), (b), 523(a), 524(a), 727(b), 944(b), 1141(d), 1228, 1328; and see 2 *Collier on Bankruptcy* (15th ed. 1991) ¶¶ 101.05, 101.12, 3 *Collier on Bankruptcy* (15th ed. 1991) ¶¶ 502.-01[1], 502.02, 523.02, 523.03, 523.04. The new Code's § 523 provides in pertinent part that

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this

title does not discharge an individual debtor from any debt—

. . . . .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

. . . . .

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

. . . . .

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

. . . . .

The deviant wording "created by" in Act § 17(a)(4) has been removed. § 523(a)(2), (4) and (6) all use the same language, excepting from discharge "any debt ... for ..." The word "debt" is elsewhere defined as "liability on a claim," 11 U.S.C. § 101(12). "Claim" is itself defined as a ... right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured,

11 U.S.C. § 101(5)(A). Therefore the Code excepts from discharge any "liability on a right to payment for" the matters specified in § 523(a)(2), (4) and (6). This language is reminiscent of the Act's formula "liabilities for ..."

Legislative history in the form of committee reports does not address the precise issue, H.Rep.No. 95–595 (1977) pp. 361–363, S.Rep.No. 95–989 (1978) pp. 77–80, Cong. Rec. (Sept. 28, 1978) pp. H–11095, –11096. There is, at least, no indication of any Congressional intent to change the substance of prior law in this regard.

Most courts interpreting § 523(a)(2), (4) and (6) have held that both actual and punitive damages are excepted from discharge under those statutes. An extensive listing of cases appears in *In re Dahlstrom*, 129 B.R. 240 (B.C., D.Utah 1991). However, some courts have held that punitive damages are dischargeable, either as a matter of law or depending on various circumstances; see *In re Dahlstrom*, supra. The U.S. Supreme Court has affirmed lower courts' rulings that a judgment, including both actual and punitive damages, was nondischargeable under § 523(a)(2), *Grogan v. Garner*, 498 U.S. ——, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). However, the Supreme Court expressly declined to decide whether or not punitive damages were properly excepted from discharge under any particular subdivision of § 523, *id.* 498 U.S. at —— n. 2, 111 S.Ct. at 657 n. 2, 112 L.Ed.2d pp. 762 n. 2. The Court of Appeals of this Circuit has affirmed a lower court's ruling that an entire judgment, including both actual and punitive damages, was nondischargeable under § 523(a)(4), *In re Wallace*, 840 F.2d 762 (10th Cir.1988). However, the issue of nondischargeability of punitive damages as distinguished from actual damages seems not to have been called to the Court of Appeals' attention; this matter is assumed, rather than decided, by *In re Wallace*. This Court has applied a broad definition of "debts" or "liabilities" so as to except from discharge attorney fees and costs incurred in defense against a fraudulent insurance claim, *In re Orrick*, 51 B.R. 92, 96 (B.C., N.D.Okl.1985); and to except from discharge attorney fees and costs incident to nondischargeable support obligations under 11 U.S.C. § 523(a)(5), *In re Poe*, 118 B.R. 809, 811 (B.C., N.D.Okl. 1990). But these cases, though apparently analogous in principle, are not precisely on point. Therefore, this Court will not simply invoke majority opinion, *Grogan v. Garner*, *In re Wallace*, *In re Poe* and *In re Orrick*, but will proceed to consider arguments specifically addressing dischargeability of punitive damages.

These arguments are discussed in *In re Dahlstrom*, supra. But this Court has some further comments regarding these arguments and their treatment in *In re Dahlstrom*.

It is sometimes said that § 523(a)(2), unlike former § 17(a)(2), expressly limits nondischargeable debts to actual damages, i.e. "any debt ... *to the extent obtained by* ... false pretenses, a false representation, or actual fraud ..." This argument supposes that the statutory phrase "to the extent obtained by" modifies and limits the word "debt." See *In re Dahlstrom,* 129 B.R. pp. 242–243 and n. 6, 246–247; and *In re Levy,* 951 F.2d 196 (9th Cir.1991). It is likely, however, that the phrase "to the extent obtained by" actually modifies "money, property, services, or ... credit," which in turn depends from "debt." Thus, the statute does not distinguish actual from punitive damages; it distinguishes contractual debts tainted with fraud from debts for mere breach of contract or "failure to pay." As originally enacted in 1978, § 523(a)(2) lacked the phrase "to the extent obtained by;" it merely used the familiar language "any debt ... for," and so presumably did except punitive damages from discharge. The phrase "to the extent obtained by" was added by amendment in 1984.

> ... [T]here is no reason to conclude that the 1984 amendments were anything but technical and cosmetic. We have found no legislative history reflecting that Congress intended to significantly alter the rights and obligations of creditors and debtors governed by this section,

*In re Gerlach,* 897 F.2d 1048, 1051 n. 2 (10th Cir.1990). Certainly there is no sign of Congressional intent to create a bankruptcy haven for perpetrators of arms-length fraud. It therefore appears that § 523(a)(2) in its amended form continues to except from discharge both actual and punitive damages for specified types of fraud. So read, § 523(a)(2) would effectively complement § 523(a)(4): the former would reach fraud in matters founded on contract or *quid pro quo,* the latter would reach fraud in matters founded not on contract but on trust; and neither one would relieve fraudulent debtors of their "debts ... for" punitive damages. In any event, whatever may be the case with regard to § 523(a)(2), the other exceptions to discharge in § 523(a)(4) and (6) lack any suggestion of limiting language. They appear to continue the tradition of former Act § 17(a)(2), (8) and cases thereunder, of excepting from discharge "liabilities for" the proscribed acts, whether such "liabilities" be "for" actual or punitive damages.

It is argued "that exceptions to discharge should be read narrowly so that they will not unduly interfere with the Bankruptcy Code's policy of providing the debtor with a fresh start," *In re Dahlstrom,* 129 B.R. p. 245. The *Dahlstrom* court "believes that holding punitive damages to be nondischargeable is in conflict with the fresh start policy," *id.,* but felt constrained by the language of § 523(a)(6) and by the U.S. Supreme Court's recent decision in *Grogan v. Garner,* supra. A closely related argument is that "By limiting the creditor to the amount of its actual damages ... the intent of the Code is fulfilled inasmuch as the creditor is made whole," *In re Dahlstrom,* 129 B.R. p. 245. This assumes that "the intent of the Code" is merely "to make creditors whole" regardless of all other considerations. This assumption is made explicit in cases such as *In re Alwan Brothers Co., Inc.,* 105 B.R. 886 (B.C., C.D.Ill.1989), as follows:

> The Bankruptcy Court is not a forum for deterring misconduct ... there is no punishment for punishment's sake in bankruptcy,

*id.* p. 892. *In re Alwan Brothers Co., Inc.* cites no authority for these propositions, except one case of doubtful relevance concerning the Warsaw Convention which has since been reversed by the U.S. Supreme Court, see *Eastern Airlines, Inc. v. Floyd,* — U.S. ——, 111 S.Ct. 1489, 113 L.Ed.2d 569 (1991), rev'g, 872 F.2d 1462 (11th Cir. 1989).

It is sometimes said that equity courts should not stoop to aid vindictive plaintiffs seeking awards of punitive damages.

> If the ... plaintiffs ... had sustained an injury to their legal rights, the courts of law were open to them for redress, and in those courts they might ... have claimed not compensation merely, but vengeance ... But before a[n equity] tribunal which refuses to listen even to

any, save those whose acts and motives are perfectly fair and liberal, they cannot be permitted to contravene the highest and most benignant principle of the being and constitution of that tribunal, *Livingston v. Woodworth,* 56 U.S. (15 How.) 546, 559–560, 14 L.Ed. 809, 815 (1853). This remark should be read in context of the case. It was made as an indignant dictum in the course of the Supreme Court's severe criticism of oppressive lower court rulings, which had imposed punitive damages in a procedurally irregular manner in a case where aggravating circumstances were conspicuously absent. Compliance with the spirit of the dictum requires some care. After all, a malicious defendant's "acts and motives" may be even less "fair and liberal" than those of a vindictive but outraged plaintiff; and surely defendants as well as plaintiffs must be forbidden to contravene the high and benign principle of an equity tribunal. It would seem that equity courts should be reluctant to *award* punitive damages, but for the same reason should be reluctant to enjoin the enforcement of those which are properly awarded by other courts, 27 AM. JUR.2d (1966) "Equity" §§ 57, 75, 76, 77, 82, 84, 112, 136–144, 42 AM.JUR.2d (1969) "Injunctions" §§ 35, 36, 238–239. Bankruptcy courts enjoy the power to *award* punitive damages in proper cases, see e.g. 11 U.S.C. § 105, § 303(i)(2)(B), § 362(h); *In re Cummings,* supra, *In re Berberian,* supra, *In re Barney's Boats of Chicago, Inc.,* 616 F.2d 164, 166–167 (5th Cir.1980), *In re Jenkins Landscaping & Excavating, Inc.,* 93 B.R. 84, 90 (W.D.Va.1988), *In re Kroh Brothers Development Company,* 91 B.R. 525, 637 (B.C., W.D.Mo.1988), *In re Landbank Equity Corporation,* 83 B.R. 362, 382 (E.D.Va.1987), *In re Criswell,* 52 B.R. 184, 204 (B.C., E.D.Va.1985), *In re Goldberg,* 12 B.R. 180, 185 (B.C., D.N.J. 1981). They certainly are capable of acknowledging punitive damages awarded by other courts.

 Punitive damages may be sought by plaintiffs for reasons of vengeance or greed. But they may be allowed by the State for reasons of policy, 22 AM.JUR.2d (1988) "Damages" §§ 733, 734 pp. 785–788,

*Pacific Mutual Life Insurance Company v. Haslip,* 499 U.S. ——, ——, —— – ——, —— – ——, ——, (majority opinion), —— – —— (Justice Scalia, concurring), —— (Justice O'Connor, dissenting), 111 S.Ct. 1032, 1040–41, 1041–43, 1043–45, 1045–46 (majority opinion), 1046–48 (Justice Scalia, concurring), 1056 (Justice O'Connor, dissenting), 113 L.Ed.2d 1, 17, 18–19, 20–22, 23 (majority opinion), 24–25 (Justice Scalia, concurring), 35 (Justice O'Connor, dissenting) (1991), *Browning–Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc.,* 492 U.S. 257, 274 n. 20, 275 (majority opinion), 297–299 (Justice O'Connor, concurring), 109 S.Ct. 2909, 2919 n. 20, 2920 (majority opinion), 2931–33 (Justice O'Connor, concurring), 106 L.Ed.2d 219 (1989). This Court is not acquainted with the law of the States of Utah (*In re Dahlstrom* ) and Illinois (*In re Alwan Brothers Co., Inc.*). In Oklahoma, at least, punitive damages may be imposed only on a defendant who is shown to have acted with "evil intent" or with "such disregard of another's rights, as is deemed equivalent to such intent," *Mitchell v. Ford Motor Credit Company,* 688 P.2d 42, 45–46 and n. 8 (Okl.1984). They are "a tool to deter the wrongdoer ... for society's benefit and not the litigating party's ... allowed after the trier of fact determines the guilt of the transgressor of acts not tolerated by society," *Slocum v. Phillips Petroleum Company,* 678 P.2d 716, 719 (Okla.1983, reh. den. 1984). They are meant "to stop *future* wrongdoing" (emphasis original), *Poolaw v. City of Anadarko, Okl.,* 738 F.2d 364, 367 (10th Cir. 1984), cert. den., 469 U.S. 1108, 105 S.Ct. 784, 83 L.Ed.2d 779 (1985), limited on other grounds by *Skinner v. Total Petroleum, Inc.,* 859 F.2d 1439, 1445 n. 6 (10th Cir. 1988), by acting "as a restraint upon the transgressor and as a warning and example to deter him and others from committing similar offenses in the future," *Amoco Pipeline v. Montgomery,* 487 F.Supp. 1268, 1272 (W.D.Okl.1980). They are not lightly imposed—thus, the amount of punitive damages may exceed the amount of actual damages (as in this instance) only if the court determines independently of the jury

that defendant's reprehensible conduct is shown by "clear and convincing evidence," 23 O.S. § 9. In these respects, punitive damages function somewhat·like criminal penalties, although it may be said that the State acts indirectly, through agency of private plaintiffs, *Pacific Mutual Life Insurance Company v. Haslip*, supra, *Browning–Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc.*, supra.

Where punitive damages are not lightly imposed, they should not be lightly taken away. Precisely because punitive damages are noncompensatory and quasi-criminal in nature, courts should treat them with respect; for to interfere with the enforcement of such punitive damages is to interfere with the State's own (indirect) attempts to discipline unruly citizens and to deter outrageous misbehavior. A Bankruptcy Court which categorically discharges such punitive damages declares, in effect, that equity will come to the rescue of those who clearly intend evil; and that the U.S. Congress intends its bankruptcy courts to act against the benefit of society, to free transgressors from restraint, and to encourage future wrongdoing!

*Grogan v. Garner* does not revise the proper, traditional fresh-start doctrine in any way. The U.S. Supreme Court's formulation of the fresh-start doctrine has limited its benefits to "honest but unfortunate" debtors for more than a hundred years—see *Neal v. Clark (Neal v. Scruggs)*, 95 U.S. 704, 24 L.Ed. 586 (1877); *Wetmore v. Markoe*, 196 U.S. 68, 25 S.Ct. 172, 49 L.Ed. 390 (1904); *Williams v. U.S. Fidelity & Guaranty Co.*, 236 U.S. 549, 35 S.Ct. 289, 59 L.Ed. 713 (1915); *Local Loan Co. v. Hunt*, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1933). The "fresh start" is, and has always been, intended to benefit honest but unfortunate debtors. Some lower courts have taken it on themselves to omit the words "honest but unfortunate" from the formula, and thus to extend a "fresh start" to vicious and fraudulent debtors along with honest but unfortunate ones. Such perversion of the fresh-start doctrine was indeed checked by *Grogan v. Garner*. But this was merely a reaffirmation of sound tradition.

It follows that there is no conflict between the "fresh start" policy and the punishment of *some* debtors. Punitive damages are usually imposed only on defendants who are culpable in the extreme, not on those who are merely "honest but unfortunate." When punitive damages are inflicted only on those who deserve them, and discharges are granted only to those who deserve them, there is no conflict between the two.

In this Court's view, the Bankruptcy Court is not a forum for excusing misconduct. And there is no discharge for discharge's sake in bankruptcy. Discharge is a means to achieve the legitimate purpose of providing *honest* debtors with a *deserved* "fresh start." This is no reason to provide dishonest and vicious debtors with a ready escape from their deserved punishment.

Likewise the habit of strict construction of nondischargeability statutes has been overdone. No doubt there are occasions when a narrow reading of an exception to discharge is appropriate. This Court has pointed out that some portions of § 523 might well be even more narrowly construed than they are at present, *In re Turner*, supra at 659. But the supposed general rule, that all exceptions to discharge should always be read in the narrowest sense that can be forced on them by a hostile judiciary, is of very doubtful validity. The nearest the U.S. Supreme Court ever came to endorsing such a rule was in *Gleason v. Thaw*, 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915), wherein the Court permitted discharge of a debt for attorney fees incurred under false pretenses by an admittedly desperate client seeking defense against a murder charge. *Gleason's* precise ruling was that the word "property" in Act § 17(a)(2) should not be read so as to include "services" rendered in expectation of payment. *Gleason* was decided on the same day as, and was fundamentally irreconcilable with the basic approach of, *Williams v. U.S. Fidelity & Guaranty Co.*, supra. *Gleason's* ruling was legislatively overruled in part in 1922 by the

enactment of Act § 17(a)(5); the case was further limited, and its reasoning rejected, by the U.S. Supreme Court in *Fidelity & Deposit Co. of Maryland v. Arenz*, 290 U.S. 66, 54 S.Ct. 16, 78 L.Ed. 176 (1933); and whatever remained of *Gleason's* ruling was legislatively overruled in 1978 by the enactment of Code § 523(a)(2), which added the word "services" to § 523(a)(2). Unfortunately, *Gleason's* rationale of narrow construction of exceptions to discharge, even in defense of dishonest debtors, has taken on a life of its own in lower courts. Its most notorious example is *Davison–Paxon Co. v. Caldwell*, 115 F.2d 189 (5th Cir.1940). The majority opinion in that case was based in part on *Gleason v. Thaw* (now discredited by *Williams* and *Arenz* and legislatively overruled), and in part on omission of the words "honest but unfortunate" from the fresh-start doctrine (recently reprehended by *Grogan v. Garner*). The dissenting opinion fiercely criticized the majority's misuse of discharge in aid of a "deadbeat," "cheat" and "swindler," 115 F.2d p. 192; this dissent was endorsed by a leading treatise on the Act, 1A *Collier on Bankruptcy* (14th ed. 1978) ¶ 17.16[3] pp. 1640–1640.1 n. 23. The precise ruling in *Davison–Paxon* was that a debt incurred by buying goods on credit knowing that they could not and would not be paid for constituted actual fraud, yet was dischargeable under Act § 17(a)(2) because mere nondisclosure of one's inability or unwillingness to pay was not an "overt false pretense or representation," 115 F.2d p. 191. This ruling was legislatively overruled by enactment of Code § 523(a)(2), which expressly excepts from discharge debts for "actual fraud" as well as "false pretenses" or "a false representation;" and see H.Rep.No. 95–595 (1977) p. 364. The 5th Circuit itself has noted that "The rationale underlying *Davison–Paxon* has been much eroded ... and the decision has been the subject of much criticism," *In re Boydston*, 520 F.2d 1098, 1101 (5th Cir.1975); for some of the criticism, see *First National Bank of Mobile v. Roddenberry*, 701 F.2d 927, 930–932 (11th Cir.1983), *In re Holston*, 47 B.R. 103, 106–108 (B.C., M.D.La.1985), *In re Buford*, 25 B.R. 477, 481–482 (B.C., S.D.N.Y.1982), and authorities cited therein. To whatever extent the "rule" of strict construction retains any validity, it is clear that it should not be carried to extremes in defense of dishonest or vicious debtors. "A canon of interpretation adjuring strictness is not ... a justification for abandoning good sense," *In re Houtman*, 568 F.2d 651, 656 (9th Cir.1978).

It is argued that § 523(a)(7), which excepts from discharge a "debt ... for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and [which] is not compensation for actual pecuniary loss," by negative implication "compel[s] the conclusion that Congress intended non-compensatory damages to be excepted from discharge only where they are owed to a governmental agency," *In re Suter*, 59 B.R. 944, 947 (B.C., N.D.Ill.1986). This negative inference is unwarranted. First, the Code elsewhere treats "fine, penalty or forfeiture" as something different from "exemplary or punitive damages," see e.g. 11 U.S.C. § 726(a)(4). If the Code's terminology is consistent, § 523(a)(7) does not deal with punitive damages at all. Second, § 523(a)(7) appears to be intended merely as the Code successor to Act § 57(j). Act § 57(j) provided that

> Debts owing to the United States or any State or subdivision thereof as a penalty or forfeiture shall not be allowed, except for the amount of the pecuniary loss sustained by the act, transaction or proceeding out of which the penalty or forfeiture arose ...

This was held to make such non-allowable debts also non-provable and therefore nondischargeable, 1A *Collier on Bankruptcy* (14th ed. 1978) ¶ 17.05 p. 1587, 3 *Collier on Bankruptcy* (14th ed. 1977) ¶ 57.22, 3A *Collier on Bankruptcy* (14th ed. 1975) ¶ 63.12. The Code did away with "provability" and permitted allowance of governmental claims. This would have rendered all such governmental claims automatically *dischargeable*, unless a specific exception to discharge were provided. § 523(a)(7) provides that exception. It sees to it that the same result which obtained under the

Act continues to obtain under the Code—i.e., that "fines, penalties or forfeitures" owed to governmental units remain nondischargeable, despite changes in the law regarding "allowability" and "provability" of such claims. Like Act § 57(j), Code § 523(a)(7) has nothing at all to do with non-governmental plaintiffs or with punitive damages owed to any litigant (governmental unit or otherwise) in ordinary civil litigation. For purposes of dischargeability of punitive damages under § 523(a)(2), (4) or (6), § 523(a)(7) is a red herring. Accord, *In re Dahlstrom,* 129 B.R. p. 246 and n. 7; *In re Levy,* supra; *In re Britton,* 950 F.2d 602 (9th Cir., 1991).

In sum, punitive damages were excepted from discharge under the former Bankruptcy Act, as indicated by both statutory language and caselaw; there is no indication of Congressional intent to change this rule, in either the language or legislative history of the present Bankruptcy Code; punitive damages are excepted from discharge under the present Bankruptcy Code, as indicated by both the language of the Code and by a majority of cases; this rule comports with State policy, the usages of equity, and basic bankruptcy policy. The minority of cases to the contrary are based on nothing more than a strained or erroneous reading of statutory language, and on a distortion of the "fresh start" doctrine which would seek discharge for discharge's sake regardless of other considerations and would pervert equity into the defender and abettor of fraud, oppression and grievous fault.

■ The Court concludes that punitive damages, which are properly assessed against a malefactor, may be excepted from discharge under 11 U.S.C. § 523(a)(4). Accordingly, in this regard Manley has failed to show that he is entitled to judgment in his favor as a matter of law.

IT IS THEREFORE ORDERED that Manley's "Motion for Summary Judgment" be, and the same is hereby, denied.