**In re Paul L. SZAFRANSKI, Debtor.**

**ROYAL AMERICAN OIL AND GAS CO., Plaintiff,**

**v.**

**Paul L. SZAFRANSKI, Defendant.**

**Bankruptcy No. 90–01394–W.**
**Adv. No. 90–0299–W.**

United States Bankruptcy Court,
N.D. Oklahoma.

Dec. 10, 1992.

James H. Werner, Tulsa, OK, for plaintiff.

Chris Economou, Tulsa, OK, for defendant.

## MEMORANDUM OPINION AND ORDER

MICKEY DAN WILSON, Bankruptcy Judge.

This adversary proceeding was submitted for decision upon stipulations and briefs. The Court takes judicial notice of the record herein and in the related Case No. 81–01069 In re Szafranski and its Adversary Proceeding No. 82–0058 Royal American Oil and Gas Co. v. Szafranski. Upon consideration thereof, the Court, pursuant to F.R.B.P. 7052, finds, concludes and orders as follows.

## FINDINGS OF FACT

On September 30, 1981, Paul L. Szafranski ("debtor") filed his voluntary petition for relief under 11 U.S.C. Chapter 7 in this Court, commencing Case No. 81–01069. This case is sometimes referred to below as "the first case." This case was first heard by the Honorable William E. Rutledge, Bankruptcy Judge. After Judge Rutledge's retirement from the bench, the case was assigned to his immediate successor, the Honorable Mickey D. Wilson, Bankruptcy Judge.

Debtor reported over $3 million in debt, most of it unsecured. Debtor's discharge was entered on January 5, 1982. However, various orders gave creditors more time in which to file complaints seeking exception to discharge. Royal American Oil and Gas Company ("Royal") was given until January 29, 1982.

On January 29, 1982, Royal filed in Case No. 81–01069 its complaint commencing Adversary Proceeding No. 82–0058. Said complaint sought damages and exception to

discharge "under 11 U.S.C. § 523(a)(2) or, alternatively, under ... § 523(a)(4)." These statutes except from discharge debts incurred by false pretenses, false representations, actual fraud, defalcation in a fiduciary capacity, embezzlement, or larceny. Pre-trial proceedings entailed long delays, by mutual consent of the parties. On September 1, 1987, Royal filed its "Application to Set Case for Trial," alleging that the parties had reached an "agreed settlement" which "ha[d] not been fulfilled."

On November 16, 1987, the adversary proceeding was assigned to the Honorable Steven J. Covey, Bankruptcy Judge. The main bankruptcy case was not assigned to Judge Covey, but remained assigned to Judge Wilson.

On December 9, 1987, Adv. No. 82–0058 came on for trial before Judge Covey. The adversary docket's minute entry for that date reads as follows:

No appearance by defendant either in person or by counsel. Finding for plf. by default of debtor for liability of damages. Judgment for $128,000.00 at 6% interest.

Judgment was not formally entered for more than six months thereafter. A "Journal Entry" filed June 20, 1988 recites as follows:

NOW, on this 9th day of December 1987, this matter comes on for hearing, and the Court finds that proper notice has been given of the date and time for this hearing, and that from the testimony as adduced in the original adversary proceeding filed herein, [Royal] has claims against [debtor's] estate which cannot be discharged in bankruptcy and must remain as valid liens against the Debtor and his estate. Further, the Court finds that, in a trial upon the merits, and having testimony adduced in open Court and hearing oral testimony and having evidence adduced in Court by documents, [Royal] should have and recover judgment against the Debtor ... herein in the sum of $189,205.76, with interest thereon as follows: $138,000.00 principal, and $61,205.76 interest, less $5,000.00 payment received June 1, 1984, and

$5,000.00 payment received August 1, 1984, for a total payment of $10,000 received.

AND IT IS SO ORDERED by the Court for all of which let execution issue.

A "Notice of Entry of Judgment" filed on the same date refers to the "Journal Entry" as an "Order" and repeats the substance of its terms. A "Judgment" filed on June 23, 1988 recites as follows:

This proceeding having come on for trial or hearing before the court, the Honorable Stephen J. Covey, United States Bankruptcy Judge, presiding, and the issues having been duly tried or heard and a decision having been rendered,

IT IS ORDERED AND ADJUDGED: [Royal] should have and recover judgment against the Debtor ... in the sum of $189,205.76, with interest thereon as follows: $138,000.00 principal and $61,205.76 interest, less $5,000.00 payment received June 1, 1984 and $5,000.00 payment received August 1, 1984, for a total payment of $10,000.00 received. (Per Journal Entry Filed June 20, 1988)

No motion to vacate said order and judgment was ever filed; no appeal was ever taken. On August 16, 1988, Adv. No. 82–0058 was closed.

For reasons unrelated to the dispute between Royal and debtor, Case No. 81–01069 remained open thereafter, and was not closed until December 11, 1991.

On May 23, 1990, debtor filed his second voluntary petition for relief under 11 U.S.C. Chapter 7, commencing Case No. 90–01394. This case is sometimes referred to below as "the second case." When debtor filed his second case, he did not disclose the existence of his still-pending first case assigned to Judge Wilson. The second case was assigned to Judge Covey, under Case No. 90–01394–C. On May 30, 1990, Judge Covey issued an "Order" which found the facts just stated in this paragraph and re-assigned the second case to Judge Wilson.

In his second case, debtor reported owing Royal only $40,000. Even so, Royal was

the single largest unsecured creditor. But Royal was by no means debtor's only creditor; debtor reported debts totalling some $280,000, most of it unsecured and incurred during or after 1982.

On July 13, 1990, a status conference was held in both cases before Judge Wilson. As a result of said conference, with the agreement of the parties, Judge Wilson on July 13, 1990 issued an "Order Extending Time for Complaints and Entry of Discharge" in the second case, i.e. in Case No. 90–01394, which said order extended the deadline for filing complaints under 11 U.S.C. § 523(c) to September 28, 1990.

On September 5, 1990, Royal filed in the second case its "Application ... for Order Adjudging Debt not Dischargeable." Said application recited and requested that

In Case # 81–01069–W the same debtor as the debtor herein listed the debt owed to this applicant ... and the debtor has again listed this obligation in this case.

By order of this Court on the 20th day of June, 1988, the debt owed to this applicant was determined to be non-dischargeable because of fraud. A copy of the Order of June 20, 1988, is attached hereto ...

WHEREFORE applicant prays that this Court enter its order declaring said debt owing to applicant ... to be a non-dischargeable debt as previously determined by this Court.

Said application bore a case number, 90–01394–C, which incorrectly indicated assignment to Judge Covey. On September 21, 1990, Judge Covey issued his "Order Denying Motion for Order Adjudging Debt Nondischargeable." This order provided that

... Pursuant to Bankruptcy Rule 7001(6), a proceeding to determine the dischargeability of debt is an adversary proceeding and cannot be accomplished by the filing of an application.

IT IS THEREFORE ORDERED that the referenced application is hereby denied as being improperly presented to the Court.

On September 24, 1990, Judge Wilson issued his "Order Reaffirming Order of Judge Covey ...," which noted the confusion caused by erroneous case numbers, directed all parties to attend to correct case numbers indicating correct judge assignments, and further provided as follows:

IT IS FURTHER ORDERED the Order of Judge Covey denying the motion for order adjudging debt nondischargeable is reaffirmed by this Judge ...

The deadline for filing complaints under 11 U.S.C. § 523(c) was not further extended, and expired on September 28, 1990. No such complaints were filed before that time.

On October 22, 1990, debtor's discharge was entered in the second case, No. 90–01394–W.

On October 23, 1990, Royal filed its "Complaint" commencing this Adv. No. 90–0299–W in the second case No. 90–01394–W. Royal's complaint referred to Judge Covey's judgment in the previous Adv. No. 82–0058 in the first case No. 81–01069; asserted that "the princip[le] of res judicata bars relitigation of this claim," complaint ¶ IV; and "urges this Court to enter its Order declaring the debt owing by [debtor] to [Royal] cannot be discharged as it has previously been determined by this Court that said debt is not dischargeable." Debtor answered, admitting the complaint's allegations of fact, but asserting that the complaint was itself barred as untimely under F.R.B.P. 4007(c).

Thereafter, Royal and debtor filed their joint "Stipulations of Fact on Merits of [Royal's] Complaint;" Royal filed its "Motion for Summary Judgment" and "Brief ..." in support thereof; debtor filed his "... Response ..." thereto; and the matter was taken under advisement.

## CONCLUSIONS OF LAW

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I), (O), 11 U.S.C. §§ 105, 523, 524.

This matter comes on for hearing on Royal's motion for summary judgment un-

der F.R.B.P. 7056 adopting F.R.Civ.P. 56. It appears that the parties intended to submit certain issues for decision on the stipulated facts, regardless of the technicalities of strict summary judgment procedure—see *In re Curtis*, 38 B.R. 364, 367–368 (B.C., N.D.Okl.1983). As will appear below, the matter can be resolved at the present stage, whether that be on motion for summary judgment or on stipulated facts and briefs.

This adversary proceeding is the latest stage in a battle between debtor and creditor that has dragged on for more than ten years. In 1981, debtor borrowed money from Royal under dubious circumstances. Royal sued debtor for fraud early in 1982, eventually gained judgment against him for $138,000 plus over $60,000 interest, and obtained this Court's ruling that said debt was excepted from discharge. The record in the previous Adv. No. 82–0058 is not perfectly clear; but it appears that judgment was entered on the basis of § 523(a)(2) or (4) or both, after offer of Royal's evidence and, at least, a full and fair opportunity for debtor to respond. Debtor had already paid some $10,000 before judgment was entered; it is not clear whether debtor has paid any more since that time; but some part of the judgment debt, perhaps $40,000, remains unpaid. Meanwhile, debtor has led Royal in pursuit out of one bankruptcy case and into another. Debtor appears to be in genuine financial difficulty, not only with Royal but with many other creditors. For purposes of this opinion, the Court presumes that debtor's first and second bankruptcy cases were filed in good faith and are not substantial abuses of the provisions of Ch. 7. Even so, it is apparent that debtor seeks to take advantage of his own repetitive bankruptcies to rid himself of his obligation to Royal. The parties bring this issue before the Court: whether a debt for fraud or comparable malfeasance, which has once been excepted from discharge in debtor's first Ch. 7 bankruptcy case, remains excepted from discharge when debtor files a second Ch. 7 bankruptcy case and is discharged a second time.

According to debtor, the precise issue is whether a creditor's complaint under 11 U.S.C. § 523(c), F.R.B.P. 4007(c) has been filed within the time allowed by F.R.B.P. 4007(c). According to Royal, the precise issue is whether an exception to discharge in debtor's first bankruptcy case is *res judicata* in debtor's second bankruptcy case. Both parties oversimplify. Debtor's version of the issue omits the circumstances of prior bankruptcy and prior exception to discharge, which distinguish this case from ordinary actions under 11 U.S.C. § 523(c), F.R.B.P. 4007(c). Royal's version of the issue invokes the judicial doctrine of *res judicata*, without considering its possible modification by statute and rule. It appears to this Court that the problem is primarily one of statutory interpretation, which in turn governs application of rules. What must be interpreted is not only, or even primarily, § 523(c). The key issue is the relationship among § 523(a), (b) and (c), with special reference to subsection (b).

■ Bankruptcy's objective is to reconcile the rights of creditors with financial relief for honest but unfortunate debtors. This represents an extraordinary intervention by equity in normal legal relations between debtors and creditors, in order to minimize the general harm threatened by financial crisis. Bankruptcy courts are inherently courts of equity, and their operations should of course be equitable in their effect. This tradition has been reinforced in recent years by the development of the bankruptcy discharge into a full-fledged injunction—the most potent of all equitable remedies. The power of the discharge-injunction brings with it a corresponding responsibility to ensure the propriety of its use. Bankruptcy statutes and rules should be construed accordingly. See 11 U.S.C. § 524(a)(2); *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *Bank of Marin v. England*, 385 U.S. 99, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966); *Securities & Exchange Comm. v. United States Realty & Improvement Co.*, 310 U.S. 434, 60 S.Ct. 1044, 84 L.Ed. 1293 (1940); *Pepper v.*

*Litton,* 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939); and *Local Loan Co. v. Hunt,* 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934); discussed in *In re Spoor–Weston, Inc.,* 139 B.R. 1009, 1012–1013 (B.C., N.D.Okl.1992); *In re Manley,* 135 B.R. 137, 140, 145–148 (B.C., N.D.Okl.1992); *In re First Security Mortgage Co., Inc.,* 117 B.R. 1001, 1007–1008 (B.C., N.D.Okl.1990); and *In re Higginbotham,* 111 B.R. 955, 961, 963–964, 965–966, 967 (B.C., N.D.Okl. 1990).

■ Bankruptcy relieves debtors by discharging their pre-bankruptcy debts, 11 U.S.C. § 524. The discharge is not a right but a privilege, granted in appropriate circumstances to debtors who deserve such extraordinary relief, *In re Higginbotham,* 111 B.R. at pp. 965–966. Debtors who fail to perform their duties in their own bankruptcy cases, or who seriously abuse the bankruptcy process itself, are denied any discharge, 11 U.S.C. § 727. Even if discharge is granted, certain types of debts are not discharged—they are "nondischargeable," or are "excepted from discharge," 11 U.S.C. § 523, because under the circumstances the discharge of these particular debts would be inappropriate—e.g., would violate due process, or offend public policy, or constitute gross unfairness and inequity. These interrelated remedies—discharge, denial of discharge, exception to discharge—serve to maintain the essential equitable character of bankruptcy relief, in furtherance of Congressional policy to afford such relief only to honest but unfortunate debtors.

The normal grounds for exception to discharge are recited in 11 U.S.C. § 523(a). These include debtor's grievous fault in his pre-bankruptcy dealings with a particular creditor, § 523(a)(2), (4), (6), (9); debtor's extraordinary responsibility, with or without grievous fault, § 523(a)(5) the imperatives of due process, § 523(a)(3); the demands of public policy, under circumstances obtaining at the time of bankruptcy, § 523(a)(1), (7), (8); and the need to protect bankruptcy from itself, by preserving *denial* of discharge through successive bankruptcies, § 523(a)(10). § 523(a) provides no exception to discharge based on *exception* to discharge in a prior bankruptcy case; but this matter is taken up in § 523(b).

11 U.S.C. § 523(b) provides that

Notwithstanding subsection (a) of this section, a debt that was excepted from discharge under subsection (a)(1), (a)(3), or (a)(8) of this section, under section 17a(1), 17a(3), or 17a(5) of the Bankruptcy Act, under section 439A of the Higher Education Act of 1965 (20 U.S.C. 1087–3), or under section 733(g) of the Public Health Service Act (42 U.S.C. 294f) in a prior case concerning the debtor under this title, or under the Bankruptcy Act, is dischargeable in a case under this title unless, by the terms of subsection (a) of this section, such debt is not dischargeable in the case under this title.

In other words, debts of certain specified types, e.g. under § 523(a)(1), (3) and (8), which are not discharged in a first bankruptcy, will be discharged in a second bankruptcy, unless their non-dischargeability is reestablished. This subsection does not expressly state what happens to debts of other types, e.g. under § 523(a)(2), (4), (5), (6), (9), which are not discharged in a first bankruptcy, but are later scheduled in a second bankruptcy.

■ Most exceptions to discharge may be determined at any time, either by the Bankruptcy Court itself, or by non-bankruptcy courts which entertain a plea of discharge as an affirmative defense, 28 U.S.C. § 1334(b); 3 *Collier on Bankruptcy* (15th ed. 1992) ¶ 523.05; 1A *Collier on Bankruptcy* (14th ed. 1978) ¶ 17.28, ¶ 17.-28A. However, exceptions to discharge under § 523(a)(2), (4) or (6) must be determined by the Bankruptcy Court in the course of a bankruptcy case, as provided by 11 U.S.C. § 523(c).

11 U.S.C. § 523(c) provides that

Except as provided in subsection (a)(3)(B) of this section, the debtor shall be discharged from a debt of a kind specified in paragraph (2), (4), or (6) of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a

982

hearing, the court determines such debt to be excepted from discharge under paragraph (2), (4), or (6), as the case may be, of subsection (a) of this section.

This statute is implemented by F.R.B.P. 4007(c), which provides that

A complaint to determine the dischargeability of any debt pursuant to § 523(c) of the Code shall be filed not later than 60 days following the first date set for the meeting of creditors held pursuant to § 341(a) ... On motion of any party in interest, after hearing on notice, the court may for cause extend the time fixed under this subdivision. The motion shall be made before the time has expired.

F.R.B.P. 4007(c) is qualified by F.R.B.P. 9006(b)(3), which provides that

The court may enlarge the time for taking action under Rule ... 4007(c) ... only to the extent and under the conditions stated in th[at] rule ...

11 U.S.C. § 523(c) and F.R.B.P. 4007(c), 9006(b)(3) create a deadline for filing complaints under 11 U.S.C. § 523(a)(2), (4) or (6), which can only be extended on motion made before the original deadline, or any extension thereof, has expired.

Here, the original deadline was extended to September 28, 1990; no motion for further extension was filed; and Royal's complaint was filed on October 23, 1990, nearly a month after the final deadline. Royal did file its "Application ... for Order Adjudging Debt Not Dischargeable" before the deadline. But this request was procedurally defective, and was denied. The denial occurred before the deadline, so that Royal had some time (though not much—a few days) in which to file a proper complaint; yet Royal did not do so. It is clear that Royal's complaint failed to meet the requirements of 11 U.S.C. § 523(c) and F.R.B.P. 4007(c), 9006(b)(3).

It is not clear whether Royal's complaint is subject to those requirements in the first place. § 523(a)(2), (4), (6) and (c) expressly state what happens to a debt for fraud or similar malfeasance which is scheduled in a first bankruptcy. § 523(a)(10) expressly states what happens in a second bankrupt-

cy after *denial* of discharge in a first bankruptcy. § 523(b) expressly states what happens in a second bankruptcy after *exception* to discharge in a previous bankruptcy under § 523(a)(1), (3) and (8). None of these statutes expressly state what happens in a second bankruptcy after *exception* to discharge in a previous bankruptcy under § 523(a)(2), (4), (6) or (9). This curious omission is readily made good, if § 523(b) is considered to imply that nondischargeable debts *other than* those under § 523(a)(1), (3) and (8) remain unaffected by subsequent discharges. Does § 523(b) by negative implication provide that debts excepted from discharge in a first bankruptcy under § 523(a)(2), (4), (6), (9) remain excepted from discharge in later bankruptcies? If it does, then § 523(b) would act as a limitation on or exception to § 523(c), such that § 523(c) would apply only to those debts whose non-dischargeability under § 523(a)(2), (4) or (6) had not been previously established in any Bankruptcy Court. Since the deadline created by F.R.B.P. 4007(c), 9006(b)(3) applies only in furtherance of § 523(b), it would not apply to matters excepted from § 523(c) by § 523(b).

█ This Court is not quick to draw negative inferences from statutes—see *In re Spoor–Weston, Inc.,* 139 B.R. 1009, 1015 (B.C., N.D.Okl.1992), negative inference refused; *In re Manley,* 135 B.R. 137, 148 (B.C., N.D.Okl.1992), negative inference refused; *In re Goodson,* 130 B.R. 897, 901 (B.C., N.D.Okl.1991), negative inference questioned; *In re Jernigan,* 130 B.R. 879, 887 (B.C., N.D.Okl.1991), negative inference mooted; *In re Higginbotham,* 111 B.R. 955, 963, 966 (B.C., N.D.Okl.1990), negative inference refused. Negative inference as a method of statutory interpretation tends to make law out of what the legislature has *not* said. This is risky; such "interpretation" can easily become interpolation. However, negative implications may sometimes be genuine. Negative inferences are safest when they conform with other statutory provisions and with legal and equitable tradition.

It appears to this Court that the language of § 523(b) suggests and supports, but does not clearly compel, such a negative inference. Likewise, § 523(c) might or might not apply to debts already excepted from discharge under § 523(a)(2), (4) or (6) in a previous bankruptcy. Considered as a whole, § 523 is ambiguous on this point.

To test the negative inference, and to resolve the statutory ambiguity, the Court proceeds to consider the legal and equitable context and legislative history of § 523(b) and (c). In the following discussion, the Bankruptcy Act of 1898 to 1978 is referred to as "the Act," and the Bankruptcy Code of 1978 to the present is referred to as "the Code."

The context and history of § 523(b) and (c) consists of four main parts: (1) the general concept of *res judicata;* (2) the development of statutory and case law on the *res judicata* effect of denial of discharge under the Act; (3) the extension of these principles to the *res judicata* effect of exception to discharge under the Act; and (4) the translation of statutory and case law under the Act into the present Code.

 *Res judicata* is a judge-made rule, whereby a judgment forever concludes issues which it determines, and therefore precludes subsequent re-litigation of such issues. It is a rule of reason, justice and policy, intended to prevent harassment and promote judicial economy, by limiting parties to one fair trial on, and one adequate determination of the merits of, a dispute. See generally 1B *Moore's Federal Practice* (2d ed. 1992) ¶ 0.405; 46 AM.JUR.2D (1969) "Judgments" §§ 394 et seq. It "reflects the refusal of law to tolerate needless litigation"—and "[l]itigation is needless if, by fair process, a controversy has once gone through the courts to conclusion," *Angel v. Bullington,* 330 U.S. 183, 192–193, 67 S.Ct. 657, 662, 91 L.Ed. 832, 838–839 (1947). If the rule is to serve its purpose, it should be applied so as to override other considerations, *Federated Dept. Stores, Inc. v. Moitie,* 452 U.S. 394, 401, 101 S.Ct. 2424, 2429, 69 L.Ed.2d 103, 110–111 (1981). The rule may be enforced even though it "renders white that which is black, and straight that which is crooked," *Jeter v. Hewitt,* 63 U.S. (22 How.) 364, 16 L.Ed. 345, 348 (1860), and "shields the fraud and the cheat as well as the honest person," *Brown v. Felsen,* 442 U.S. 127, 132, 99 S.Ct. 2205, 2210, 60 L.Ed.2d 767, 772 (1979). However, it is questioned whether a rule founded on justice should be applied unjustly, *England v. Louisiana State Board of Medical Examiners,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964); *Riordan v. Ferguson,* 147 F.2d 983, 988 (2d Cir.1945), dissenting opinion; 1B *Moore's Federal Practice,* supra, ¶ 0.405[11], [12]; 46 AM.JUR.2D, supra, § 402. And, of course, the judicial rule can be modified by statute, *International Paper Co. v. Maddox,* 203 F.2d 88, 90 (5th Cir.1953).

Early bankruptcy cases under the Act held that, when a bankrupt's discharge was denied, the denial of discharge became *res judicata* that none of the debts in that bankruptcy case should ever be discharged. If the bankrupt later filed a second bankruptcy case and obtained a discharge therein, the debts which had not been discharged in the first case should not be discharged in the second case. Though rationalized as *res judicata,* this rule was grounded in bankruptcy policy: it ensured that the penalty of denial of discharge could not be evaded simply by filing a second bankruptcy, *In re Fiegenbaum,* 121 F. 69 (2d Cir. 1903). However, the rule was defective in the following respects.

First, it made no distinction between denial of discharge as a penalty (deliberately inflicted after adjudication of the bankrupt's malfeasance in his own bankruptcy case), and loss of discharge as a mere consequence of the bankrupt's lapse (due to failure to pay the filing fee, or failure to make timely application for entry of discharge). The former was certainly an adjudication capable of becoming *res judicata,* and was a penalty for wrongdoing which deserved subsequent enforcement. The latter was not so definite, nor so serious. But the rule treated both alike, thereby exceeding both its rationale (of *res judica-*

*ta* ) and its reason (punishing bankrupts' malfeasance).

Second, the rule originally required creditors to take affirmative steps to bring the first denial of discharge to the attention of the bankruptcy court in a second bankruptcy case. This requirement seems to have arisen as a mere side effect of the primitive law of discharge which obtained at this early date. Bankruptcy courts entered discharges, but lacked jurisdiction to adjudicate their scope and effects. Exceptions to discharge were determined by non-bankruptcy courts, in the course of post-bankruptcy litigation in which creditors pressed bankrupts for payment, bankrupts asserted discharge as an affirmative defense, and creditors replied by asserting exception to discharge. Nonbankruptcy courts determined such issues by looking to the exceptions to discharge expressly provided in Act § 17. At first, this statute did not include a specific exception to discharge for debts which had been un-discharged in a previous case. Yet the theory of *res judicata,* or rather the policy of enforcing the penalty of denial of discharge, demanded that some such exception be made. Bankruptcy courts improvised a solution within their jurisdiction by issuing "qualified" or "limited" discharges, in which the bankruptcy court's own order of discharge made specific exception for debts which had been un-discharged in a previous bankruptcy case. But a bankruptcy court could issue such a qualified discharge only if that court knew of the qualification in time to build it into the discharge. If the court did not know, it would issue discharge in the second case without exception for debts of this type; and the unqualified second discharge would itself become *res judicata* and would discharge the previously undischarged debt. See *Blumenthal v. Jones,* 208 U.S. 64, 28 S.Ct. 192, 52 L.Ed. 390 (1908); *In re Summer,* 107 F.2d 396 (2d Cir.1939), cert. den. 309 U.S. 680, 60 S.Ct. 718, 84 L.Ed. 1024 (1940); *Ginsberg v. Thomas,* 170 F.2d 1 (10th Circ.1948).

In *Freshman v. Atkins,* 269 U.S. 121, 46 S.Ct. 41, 70 L.Ed. 193 (1925), the U.S. Supreme Court held that these traditional rules should be applied in a fair and discriminating manner. The Court, per Mr. Justice Sutherland, declared that

[T]he objection that the issue ... has been adjudged, goes to the right of the bankrupt to maintain [an application for discharge in a second bankruptcy case] ... To ignore [the events of the first bankruptcy case] and make a second application, involving a new hearing, was an imposition upon and an abuse of the process of the court, if not a clear effort to circumvent the statute by enlarging the statutory limitation of time within which an application for discharge must be made. In such a situation the court may well act of its own motion to suppress an attempt to overreach the due and orderly administration of justice. What is said in the Fiegenbaum Case ... 121 Fed. [at p.] 70, is appropriate here: "Not only should the court of bankruptcy protect the creditors from an attempt to retry an issue already tried and determined between the same parties, but the court, for its own protection, should arrest, in limine, so flagrant an attempt to circumvent its decrees." There is nothing in Blumenthal v. Jones ... to the contrary. There the previous denial of a discharge had been in another court sitting in another state ... This is far from saying that the court may not take judicial notice of, and give effect to, its own records in another but interrelated proceeding, as this one was,

*Freshman v. Atkins,* 269 U.S. at pp. 123–124, 46 S.Ct. at p. 42, 70 L.Ed. at p. 195. This limited the previous case of *Blumenthal v. Jones,* and made it clear that courts should fashion their rulings on such matters so as to discourage abuse of process. Unfortunately, this case and its caveat were sometimes overlooked (see, e.g., *Ginsberg v. Thomas,* supra, which cites *Blumenthal v. Jones* but not *Freshman v. Atkins* ).

What was the *res judicata* effect of *exception* to discharge in a previous bankruptcy? Act § 17a(3) provided that debts which were not listed in bankruptcy were not discharged, 1A *Collier on Bankruptcy* (14th ed. 1978) ¶ 17.23. It was early held

that debts which were unlisted and undischarged in a first bankruptcy could be listed and re-discharged in a second bankruptcy, notwithstanding *res judicata.*

Failure to schedule and consequent failure to discharge a particular debt does not operate to adjudicate that the debt is not dischargeable. There is no res adjudicata doctrine, because nothing has been adjudicated ... If a discharge is refused, then, of course, that refusal is res adjudicata ... Of course, where there is a refusal to discharge, the adjudication necessarily is that for some reason justified by the statute the bankrupt cannot obtain discharge of any of his debts,

*In re Baker,* 275 F. 511 (S.D.N.Y.1920). The converse of *Baker's* rationale is that actual adjudication of nondischargeability in a first bankruptcy, under those subdivisions of § 17a other than (3), should be *res judicata* in a second bankruptcy; and such debts, once held nondischargeable, should not be re-dischargeable. Thus, unlike the law of *denial* of discharge, the law of *exception* to discharge appeared capable of making fine distinctions between adjudication and lapse, real malfeasance and mere nonfeasance. However, this Court knows of no cases under the Act which actually considered such logical extension of the rule of *Baker.*

So the rule of *res judicata* in discharge and dischargeability remained incomplete and occasionally unjust. Only in 1970, in the last years of the Bankruptcy Act, did the primitive system finally change. See generally Countryman, "The New Dischargeability Law," 45 A.B.L.J. 1 (1971).

The changes of 1970 were provoked by abuse of the old system. Creditors who sued debtors after discharge might expect some debtors to fail to assert discharge as a defense (because debtors mistakenly assumed their discharges were self-executing, and were unwilling to pay attorney fees to resist post-bankruptcy lawsuits) and suffer adverse judgment as a result. If debtors did assert discharge as a defense, creditors might trick out relatively innocuous conduct by debtors (such as marginally inaccurate or incomplete financial disclosure, or ignorant disposition of collateral) in the garb of "fraud" or "conversion," and have such debts excepted from discharge by State court judges who were not sensitive to the special demands of bankruptcy equity. To remedy such abuses, in 1970 Congress overhauled the Act's discharge and dischargeability provisions.

First, Congress made the discharge an injunction in its own right, more potent and self-enforceable than the old affirmative defense. An injunction, of course, is an equitable remedy which is supposed to be equitable in its effect. As equitable power increases, so should equitable responsibility. The full implications of this "increase in equity" in bankruptcy law and administration have perhaps not yet been realized.

Next, Congress gave Bankruptcy Courts concurrent jurisdiction with non-bankruptcy courts to determine most exceptions to discharge, i.e. those under Act § 17a(1), (3), (5), (6) and (7). Parties could now ask the Bankruptcy Court for a declaratory judgment that a particular debt was or was not excepted from discharge under these subdivisions of § 17a. Alternatively, they could still bring the question of exception to discharge under § 17a(1), (3), (5), (6) and (7) before a non-bankruptcy court in the traditional way, by affirmative defense to a post-bankruptcy action on the debt. But the most-abused exceptions to discharge, concerning alleged dishonesty and malice under Act § 17a(2), (4) and (8), were now placed in the exclusive jurisdiction of the Bankruptcy Court. This last measure made it necessary to require such exceptions to discharge to be determined in the course of a bankruptcy case, within a limited period of time. But the Bankruptcy Rules made the deadline reasonably flexible, so that measures meant to give justice to debtors did not take justice from creditors—see former Rules 404(c), 906(b).

Also, the old judge-made exception to discharge on ground of *res judicata* was given statutory recognition by enactment of Act § 17b. However, § 17b elaborated and refined the crude old doctrine of case-

law. This new subsection's first and second sentences provided as follows:

> The failure of a bankrupt or debtor to obtain a discharge in a prior proceeding under this Act for any of the following reasons shall not bar the release by discharge in a subsequent proceeding under the Act of debts that were dischargeable under subdivision a of this section in the prior proceeding: (1) discharge was denied in the prior proceeding solely under clause (5) or clause (8) of subdivision c of section 14 of this Act; (2) the prior proceeding was dismissed without prejudice for failure to pay filing fees or to secure costs. If a bankrupt or debtor fails to obtain a discharge in a proceeding under this Act by reason of a waiver filed pursuant to section 14a of this Act or by reason of a denial on any ground under section 14c of this Act other than clause (5) or clause (8) thereof, the debts provable in such proceeding shall not be released by a discharge granted in any subsequent proceeding under this Act.

In other words, denial of discharge as a penalty for debtor's grievous fault would "flow through" any subsequent bankruptcy, while denial of discharge for less serious reasons would allow re-discharge of those debts in a later bankruptcy. The principle is familiar from *In re Baker*, supra; but Congress here applied it to *denial* of discharge in a previous case. The last sentence of § 17b continued as follows:

> A debt not released by a discharge in a proceeding under this Act by reason of clause (3) of subdivision a of this section 17 may nevertheless be dischargeable in a subsequent bankruptcy proceeding.

This sentence codifies the original, narrow rule of *In re Baker*, supra. It expressly states that debts excepted from discharge under § 17a(3) are re-dischargeable in a later bankruptcy. It does not expressly state what happens to other debts excepted from discharge under other parts of § 17a.

It does appear that § 17b treats the *res judicata* effect of previous denial of discharge and previous exception to discharge as governed by the same principles. The first two sentences of § 17b describe the operation of these principles in the context of *denial* of discharge, as to minor default under § 14c(5), (8), or for failure to pay filing fee, and as to serious malfeasance under any other subdivision of § 14c. The third sentence carries on into the related context of *exception* to discharge, but specifies only what happens to previous exception to discharge under § 17a(3).

§ 17a(3) is a type of minor default, comparable to § 14c(5), (8). Omission of a debt from bankruptcy schedules under § 17a(3) was usually inadvertent; it did not involve pre-bankruptcy outrage of a creditor; there was no adjudication of anything, but a failure to adjudicate due to lack of personal jurisdiction or of due process; and the basis for the exception to discharge could change, if the debt which had been omitted from the first bankruptcy was properly listed in a second bankruptcy. Other exceptions to discharge under § 17a(1), (2), (4), (5), (6), (7) and (8) were different. They rested either on debtor's malfeasance or on compelling public policy; they involved pre-bankruptcy acts; and, for the most part, such circumstances would not change through successive bankruptcies. Hence the theory of *res judicata*, and the policy of "refusing" discharge as a punishment for malfeasance, would be satisfied by making *only* those debts excepted from discharge under § 17a(3) re-dischargeable. There is an especially strong implication that debts excepted from discharge under Act § 17a(2), (4) and (8) should not be re-dischargeable. Exceptions to discharge on these grounds would now have to be established by litigation in the Bankruptcy Court during debtor's first bankruptcy. Hence, to paraphrase *In re Baker*, supra, "something would have been adjudicated" in the first bankruptcy. The Bankruptcy Court would have affirmatively "refused" to discharge a particular debt. That should put an end to the matter—it should be *res judicata* in a later bankruptcy.

The third sentence, then, parallels the first two sentences, but does not repeat all the detailed prescriptions of the first two sentences. Instead, it employs a negative implication. The last sentence of § 17b

*states* that a debt excepted from discharge in a first bankruptcy under § 17a(3) is re-dischargeable in a second bankruptcy. It *implies* conversely that a debt excepted from discharge in a first bankruptcy under any other subdivision of § 17a stays excepted from discharge, and is not re-dischargeable, in a second bankruptcy.

A leading treatise on the Act took for granted the connection among the various parts of § 17b and the negative implication of the third sentence thereof, as if these things were patently obvious; and merely discussed the reasons for such a rule:

> The exceptions which in § 17b permit a subsequent discharge to include debts existing in an earlier proceeding are for reasons that do not impute any type of dishonesty[,] lack of integrity[,] fraud or the like. All of the other causes ... do have an element of dishonesty, etc. attached, or lack of cooperation, and ... there is no reason for the bankrupt to be able to obtain a discharge later which would include these prior debts. If that were the case, there would be too much of an opening to circumvent the intent of Congress in establishing limitations on the right to obtain a discharge. Where, however, the reason has nothing to do with any act involving dishonest dealing with the creditors, the purpose of the statute is just to the contrary. *The same reasoning is true* ... where the particular debt involved was not discharged because it was not scheduled in the earlier proceeding. No harm is done creditors or the system itself ...,

1A *Collier on Bankruptcy* (14th ed. 1978) ¶ 17.06 p. 1593.4 (emphasis added).

With these developments, the conditions which had shaped the old requirement, that creditors take affirmative action before discharge in a second bankruptcy, disappeared. The Act itself now provided a general, uniform exception to discharge for debts not discharged in a prior case. Issuance of a special qualified or limited discharge by the bankruptcy court was now unnecessary. Hence affirmative action by creditors to bring such matters to the court's attention before entry of discharge was also unnecessary. Cases such as *Blumenthal* and *Ginsberg* became outdated.

A few years later, the Act was replaced by a new Bankruptcy Code. The substance of Act § 17b and related caselaw was meant to be carried over into the Code, H.Rep. No. 95–595 p. 365 (1977), S.Rep. No. 95–989 pp. 79–80 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. However, its statutory form was altered. Former Act § 17b was split into two parts. The substance of Act § 17b's first two sentences, concerning exception to discharge based on *denial* of discharge in a prior bankruptcy, went into Code § 523(a)(10). The substance of Act § 17b's last sentence, concerning exception to discharge based on *exception* to discharge in a prior bankruptcy, went into Code § 523(b).

The resemblance between Act § 17b's last sentence and Code § 523(b) is especially evident in the original House and Senate drafts of § 523(b). Act § 17b had named only one category of re-dischargeable debt, namely debts unscheduled in the first bankruptcy as provided in Act § 17a(3); proposed Code § 523(b) named the same category of re-dischargeable debt, as provided in Code § 523(a)(3). Later, it was apparently recognized that some other exceptions to discharge also involved relatively innocent conduct by debtors, and should likewise be eligible for reconsideration in a later bankruptcy case. These included debts for taxes, § 523(a)(1), and student loans whose repayment is not an undue hardship, § 523(a)(8). The proposed statute was rewritten accordingly. As finally enacted, § 523(b) provided for review in a second bankruptcy of three types of non-dischargeable debts, not just one type as in Act § 17b.

It therefore seems that the negative implication which arose from Act § 17b was meant to carry over into the Code, with some logical extensions, but no drastic modification, of the principle. The principle is that debts which are excepted from one discharge due to debtor's own grievous fault remain excepted from later discharges too.

988

A leading treatise on the Code takes such negative implication for granted, in the tradition of Act § 17b.

> The reason for excepting this kind of debt [listed in both § 523(a) and (b)] from discharge has nothing to do with any act involving dishonest dealing with the creditors. There is no sound reason why a debtor should be forever barred from having such debt discharged,

3 *Collier on Bankruptcy* (15th ed. 1992) ¶ 523.20 p. 523–166. This passage presumes that debtors are "forever barred" from discharging the remaining kinds of debts, which were excepted from discharge under § 523(a) and are omitted from the saving provisions of (b).

■ This Court agrees with *Collier*. In this particular instance, a negative inference is warranted. § 523(b) continues and improves upon the tradition of Act § 17b. It recognizes that specified types of exception to discharge, e.g. under § 523(a)(1), (3) and (8), need not involve debtor's "dishonest dealing with the creditors," and deserve to be up-dated and re-considered if circumstances change in a second bankruptcy case. This is an express limitation of an implied general principle. The general principle is that other types of exception to discharge, especially under § 523(a)(2), (4) or (6), do involve "dishonest dealing with the creditors," which circumstances do not change in a second bankruptcy case. When the dishonest circumstances and nondischargeable character of such a debt have been judicially determined once, they need not be determined again. Indeed, such matters *should not* be litigated again; for such relitigation would promote repetitive bankruptcies, harass creditors, waste judicial resources, and misuse procedural mechanisms so as to obstruct, rather than facilitate, disposition of disputes on their merits. In *Collier's* words, "[t]here is … sound reason why a debtor should be forever barred from having such debt[s] discharged." Accord (in dictum), *In re Edson*, 86 B.R. 141, 143 (B.C., E.D.Wis.1988).

In summary, § 523(b) does two things. First, by its express provisions, it permits discharge of a formerly-nondischargeable debt where new circumstances make the debt newly dischargeable "on its merits." Second, by its negative implication, it forbids discharge of a debt whose nondischargeability "on its merits" was established in a prior case, on the basis of past acts which do not change. This satisfies general policies of finality and judicial economy according to the doctrine of *res judicata* as well as the special demands of bankruptcy equity.

In the present instance, repetitive litigation cannot be completely prevented; for debtor has already filed his second bankruptcy, and Royal has felt compelled to protect its exception to discharge by bringing this second adversary proceeding. But this repetitive litigation can be made much quicker and cheaper than it would be otherwise. To that extent, the doctrine of *res judicata* can still be vindicated.

The substance of Act § 17c, placing the determination of certain much-abused exceptions to discharge in the exclusive jurisdiction of the Bankruptcy Court, was also carried over into Code § 523(c). As under the Act, creditors were required to litigate these matters during a bankruptcy case. But in 1983, new Bankruptcy Rules 4007, 9006 imposed rigid deadlines on such litigation. The same rigidity was imposed by Bankruptcy Rules 4004, 9006 on litigation seeking denial of discharge under § 727(a). These new rules deliberately removed the old loophole in the deadline, for reasons of administrative convenience. Courts have enforced these new rules regardless of harsh consequences. As a result, debts which a dishonest or vicious debtor incurred by grievous malfeasance may be cancelled because of an innocent creditor's relatively inconsequential procedural error. In practice, the most reprehensible of all debts, those incurred by fraud, theft or malice, have become the easiest to discharge—not because Congress believed they deserved discharge, but merely because the Rules of Bankruptcy Procedure inflict technical handicaps on innocent victims of outrage. Such rules will be enforced by this Court, *In re Roderick*, 126 B.R. 280 (B.C., N.D.Okl.1991). But this Court need not go out of its way to extend

such rules beyond their clear and necessary scope.

 Here, the purpose of § 523(c) and Rules 4007, 9006 has been fully served by the first adversary proceeding in the first case. Debtor has had his chance to contest Royal's allegations of fraud or malice, before the court chosen by Congress to give all due consideration to debtor—and debtor lost that contest. Nothing in § 523(c) or Rules 4007, 9006 compels or permits a rematch.

In the matter now before this Court, a debtor who has been adjudged dishonest seeks to gain undeserved escape from the consequences of his own fraud. He has led his creditor into the tangle of multiple bankruptcies, and would have this Court use successive discharges so as to close a trap on the tired and unwary but basically innocent creditor. This Court declines to do so. The bankruptcy discharge is not a trap for the innocent; it is an equitable remedy, intended to further a noble purpose in a fair manner. This Court reads and applies § 523(b) and (c) accordingly.

Debts which were excepted from discharge in a first bankruptcy case under § 523(c), remain excepted from discharge in a subsequent bankruptcy case under § 523(b), without need of relitigation under § 523(c). Since § 523(c) does not apply, such continuing exception to discharge may be established in the normal manner—i.e., either by reply to affirmative defense of discharge on a suit in non-bankruptcy court; or by adversary proceeding, not subject to deadlines under F.R.B.P. 4007(c), 9006(b)(3), in Bankruptcy Court.

It follows that Royal's complaint should be construed, not as a request for original exception from discharge under § 523(a)(2), (4) and (c), but as a request for declaratory judgment that Royal's debt, already excepted from discharge under § 523(a)(2), (4) in a previous case, remains excepted from discharge under § 523(b) in this case. As such, Royal's complaint is not subject to the deadlines created by F.R.B.P. 4007(c), 9006(b)(3) for purposes of litigation under § 523(c). No reason appears why Royal's complaint should be treated as untimely. It appears from the record before the Court that Royal's complaint is well-merited. Since the nondischargeable character of Royal's debt has already been determined, and is preserved from re-determination or subsequent discharge by 11 U.S.C. § 523(b), there is no need for further evidence on the matter. On these undisputed facts, Royal is entitled to judgment in its favor as a matter of law.

Accordingly, Royal's "Motion for Summary Judgment" must be, and the same is hereby, granted. Royal shall prepare and submit an appropriate form of judgment.

AND IT IS SO ORDERED.